ENCARNACIÓN FUENTES ET AL., Plaintiffs and Appellants, *v.*
SECRETARY OF THE TREASURY, Defendant and Appellee.

No. 12684. Decided May 24, 1962.

*Víctor Gutiérrez Franqui, Luis F. Sánchez Vilella, C. Morales, Jr., Federico Ramírez Ross,* and *Juan E. Serrallés III* for appellants. *Hiram R. Cancio, Secretary of Justice, Arturo Estrella, Assistant Secretary of Justice, Cándido Ceballos,* counsel for the Department of Justice, for the Secretary of the Treasury of Puerto Rico.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos and Mr. Justice Santana Becerra.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

## I

On August 18, 1953, appellants Encarnación Fuentes, as the surviving spouse and heir, and José Suárez Fuentes, and Johnny Suárez Miranda, a minor represented by his tutor Rafael Berríos Cabrera, as heirs of Marcial Suárez Suárez,

filed a petition for injunction in the Superior Court, San Juan Part, against the Secretary of the Treasury. They alleged that on October 5, 1951, the Secretary assessed income taxes due by predecessor Marcial Suárez Suárez, as follows:

| | |
|---|---:|
| Year 1941—Receipt No. F-20012 for | $ 3,667.02 |
| Year 1942—Receipt No. F-300012 for | 3,965.03 |
| Year 1944—Receipt No. F-513421 for | 42,897.13 |
| Year 1945—Receipt No. F-611475 for | 35,366.36 |
| Year 1946—Receipt No. F-767535 for | 75,381.42 |
| Total: | $161,276.96 |

That José Suárez Fuentes and Johnny Suárez Miranda, as heirs, were bound by law to pay any debts of the predecessor, and that plaintiff Encarnación Fuentes was liable for 50 per cent of such debts; that in assessing the deficiencies of the tax due, the Secretary did not comply with the provisions of § 57(a) of the Income Tax Act requiring that a preliminary notice and a final notice be given to the taxpayers by registered mail, from which final notice they may appeal to the Superior Court; that as a result of the Secretary's failure to give such preliminary and final notices the assessment of the tax was null and void. That subsequent to the assessment and without giving the final notice required by law, the Secretary proceeded to levy an attachment on all the properties of the heirs and that such illegal action is prejudicial to them; that the plaintiffs did not have a remedy at law because they were never notified formally nor received final notice from which they could appeal to the Superior Court; and that the remedy to pay and apply for a refund was not available to them because they did not have the sums necessary to pay the total tax; further, that the attachment levied by the Secretary deprived the taxpayers of the full enjoyment of their properties and that they were prejudiced

by his illegal action. They moved for a writ of injunction ordering the Secretary of the Treasury to set aside the orders of attachment and to cancel the afore-mentioned receipts; to notify pursuant to law the deficiencies originally determined to predecessor Marcial Suárez Suárez in such manner as will permit the plaintiffs to litigate their validity.

The Secretary filed a motion to dismiss the said petition alleging lack of jurisdiction pursuant to the provisions of subds. 3 and 7 of § 3 of Act No. 1 of February 25, 1946 (Sess. Laws, p. 2), and that the plaintiffs had a remedy at law. He also filed a motion for summary judgment in his favor invoking the averments of the plaintiffs in *case I-301* brought by them in the Tax Court of Puerto Rico, as well as the conclusions and judgment rendered in that case, and alleging that that action constituted res judicata of the questions raised in the petition for injunction, and that the plaintiffs had incurred laches or delay to the prejudice of the Secretary since if the complaint were sustained the deficiencies could not be assessed nor collected because they had prescribed.

The parties having been heard on the questions raised by the Secretary, the trial court rendered judgment on December 23, 1953 denying the petition for injunction. This judgment was reversed in *Fuentes* v. *Sec. of the Treasury*, 80 P.R.R. 198, on the grounds set forth in that opinion. There we said that it was evident that the trial court had rendered judgment on the pleadings taking as a basis the motion to dismiss, and that it did not consider nor pass upon the motion for summary judgment, and that in deciding the appeal we were not considering the merits of the questions raised by the Secretary in his motion for summary judgment, which ought to be decided by the trial court.

## II

The appeal before this Court involves this second phase of the case, which hinged fundamentally on *case I-301 supra.*

In this litigation the plaintiffs herein and the other heir, Juan Suárez Fuentes, filed a complaint in the Tax Court on November 2, 1951, challenging the tax deficiency determined by the Secretary to predecessor Marcial Suárez Suárez for 1943 and 1944. They alleged that the predecessor had died on December 19, 1949, leaving as heirs the plaintiffs therein and herein; that on February 6, 1950, the District Court of San Juan had appointed heir and testamentary executor Juan Suárez Fuentes as judicial administrator of the decedent's property; that at the time of the death of Marcial Suárez the Secretary was investigating the predecessor's returns for 1941 to 1946, inclusive, as a result of which deficiencies were notified to the predecessor himself in the following amounts: 1941—$11,511.56; 1942—$26,332.76; 1943—$85,332.27; 1944—$67,926.05; 1945—$75,006.79; and 1946—$103,467.24.

They further alleged that, feeling aggrieved by such deficiencies, the plaintiffs-heirs moved for reconsideration and that after several administrative hearings, negotiations, and conferences with the Secretary's agents, the plaintiffs and the agents reached an agreement on the amount to be paid by way of deficiencies in each of the years in question. (The taxes and the corresponding receipts which the plaintiffs alleged they had consented to and agreed to pay are the same as those involved in the petition for injunction which have been specified hereinabove.)

The plaintiffs herein further alleged that as plaintiffs in case I-301, on October 18, 1951 the Secretary notified the heirs of a deficiency for 1943 in the amount of $25,721.29, and that such notice was the Secretary's decision, on reconsideration, of the deficiency notified for that year on November 30, 1949, after holding an administrative hearing. That the Secretary required the plaintiffs at that time, as a prerequisite for the assessment of the taxes agreed upon, that they waive the right to notice of the assessment of such taxes

before the tax was assessed; and they expressly alleged *that this agreement covered the years 1941, 1942, 1944, 1945, and 1946, and that by mutual agreement of the parties the year 1943 had not been liquidated* because the Secretary had refused to allow the deduction of certain items representing losses of taxpayer Marcial Suárez Suárez which were deductible in 1943; that those losses would not only absorb the tax for 1943, but would leave a balance which the taxpayer was entitled to carry over to the following year 1944. They further alleged that in view of that situation they had not made any waiver as to the tax levied for 1943, and agreed with the Secretary to appeal to the court to determine the legality of those deductions. That upon signing the waiver of the notice of assessment for 1944, they had made the reservation that it was conditioned on the decision which might be entered with respect to the taxable year 1943, since it would be necessary to carry over to 1944 any excess in the previous year's losses.

The plaintiffs further alleged in *case I-301* their right to deduct in 1943 worthless debts amounting to $100,164.33 and to challenge the deficiency determined for that year. In a second cause of action they alleged that the Secretary had assessed a tax for 1944 without taking into account the conditional manner in which they had accepted the assessment, subject to the results of the litigation for 1943, and that for that reason the Secretary had violated the agreement with them as respects the year 1944. In that complaint they prayed that the deficiency for 1943 be set aside on the basis of the deduction of the worthless credits claimed, and to render null and void the assessment for 1944 as a result of the carrying over of those losses.

On February 13, 1953 the San Juan Part of the Superior Court rendered judgment in *case I-301*, through Judge Antonio S. Romero. Among the facts which the trial court found proved in *case I-301* are the following: (1) Marcial

Suárez Suárez died on December 19, 1949, his heirs being the plaintiffs therein. By order of February 6, 1950 of the District Court of San Juan, the heir and testamentary executor Juan Suárez Fuentes also became judicial administrator of the inheritance estate. (2) On November 30, 1949, the Treasurer notified Marcial Suárez Suárez of tentative tax deficiencies which were reconsidered at the request of the parties in interest. (3) After several administrative hearings and conferences between the representatives of both parties, the latter reached a satisfactory agreement with respect to the additional income taxes to be paid for *the years involved* (1941 to 1946), with the exception of 1943 and of the effects, in 1944, of the decision of the court for 1943. (4) The difficulty with 1943 arose from the disallowance by the Treasurer of the deduction of items amounting to $100,164.33. Thereafter the trial court proceeded to consider the controversy as respects the worthless debts and held that they were not deductible in 1943, sustaining the deficiency determined for that year and leaving untouched the deficiency for 1944. It accordingly concluded that the waiver as to the assessment for 1944 was invalid and ineffective. Eventually, this decision was affirmed in its entirety in *Heirs of Suárez* v. *Sec. of the Treas.*, 82 P.R.R. 311.[1]

### III

Upon remanding the injunction case to the trial court after our judgment of March 10, 1958, 80 P.R.R. 198, the Secretary of the Treasury attached to his original motion for summary judgment and other papers a sworn statement which was filed of record on September 5, 1958, setting forth: (1) That on November 30, 1949 notice of tentative deficiencies was sent to Marcial Suárez by *registered mail No. 1671*

---

[1] Regarding the aspect of the waivers of the assessment and collection for 1941, 1942, 1944, 1945, and 1946, which is the gist of the controversy in the injunction case, see the testimony of plaintiffs' accountant, Angel de Angel, copied in our opinion, 82 P.R.R. at 319.

for the years 1941 to 1946, inclusive, in the amount of $369,576.67. (2) That Marcial Suárez died on December 19, 1949, and was survived by his widow, Encarnación Fuentes, his children, José and Juan Suárez Fuentes, and his grandchild, Juan Suárez Miranda, and that Juan Suárez Fuentes was appointed testamentary executor and later judicial administrator. (3) That after holding the corresponding administrative hearing, on May 22, 1951 he notified by *registered mail No. 5766* final deficiencies in the amount of $369,998.75 for the years 1941 to 1946, addressed as follows: "Mr. Marcial Suárez (deceased), c/o Mr. Juan Suárez Fuentes, Río Grande, Puerto Rico." (4) That on June 11, 1951, request was made for reconsideration of the final notice of deficiencies served on May 22, 1951. (5) That on the basis of additional evidence submitted, the final deficiencies notified on May 22, 1951 were readjusted, and that Juan Suárez, in his capacity of executor of Marcial Suárez, accepted the deficiencies thus readjusted for all the years in litigation, with the exception of 1943, signing waivers of the restrictions for the assessment and collection of the tax for those years. (6) That in view of the failure of the heirs of Marcial Suárez to pay the deficiencies in question, on October 24, 1951 the tax was levied as it had been accepted by Juan Suárez Fuentes in his capacity of executor.

The waiver papers for each year, except 1943, signed "Marcial Suárez (deceased) By: (sgd.) Juan Suárez, Juan Suárez, Executor for Marcial Suárez," were attached to the foregoing sworn statement. In those papers the restrictions imposed by § 57 of the Act were waived and consent was given to the assessment and collection of the deficiency for each year. The deficiencies thus readjusted and accepted amounted to $121,171.13 as compared with $344,277.46 before adjustment and acceptance.

The plaintiffs did not file any written opposition to controvert or challenge the facts set forth in the sworn state-

ment nor in the other papers attached to the motion for summary judgment. The issue thus joined, the trial court rendered judgment on January 28, 1959 denying the petition for injunction. The court concluded that on the basis of the evidence relative to the motion for summary judgment, the Secretary of the Treasury had complied with the provisions of § 57(a) of the Act and had given notice by registered mail of the tentative and final determinations of deficiencies for the years in litigation. The plaintiffs appealed.

## IV

■■■ In view of the foregoing facts, the trial court was bound to render summary judgment denying the petition for injunction on the basis of the issues of fact which it had under consideration, possibly, under the doctrine of res judicata, or better still, under the doctrine of collateral estoppel by judgment—*case I-301*—and, unquestionably, in harmony with the facts alleged by the Secretary in his motion for summary judgment, which facts were not controverted by the plaintiffs. *Cf. Cortés v. Heirs of Cortés*, 83 P.R.R. 660 (1961); *Gómez v. Marques*, 81 P.R.R. 701; *Vega v. P. R. Railroad & Transport Co.*, 79 P.R.R. 379; *Cedeño v. Dental Board*, 79 P.R.R. 518; *Municipality v. Super. Court; Torres, Int.*, 78 P.R.R. 777; *Sánchez v. De Choudens*, 76 P.R.R. 1; *Despiáu v. Pérez*, 76 P.R.R. 117; *Rivera v. Chancellor of the University*, 73 P.R.R. 361, 375; *Hettinger & Co. v. District Court*, 69 P.R.R. 128.[2]

---

[2] Rule 36.5 of the Rules of Civil Procedure of 1958, which was in force at the time the Secretary of the Treasury attached his sworn statement and other papers to the motion for summary judgment and on the date judgment was rendered in the case, provides that "If a motion for summary judgment is supported in the manner provided in Rule 36, the opposing party may not rely solely on the assertions or denials made in the pleadings, but shall be bound to answer in such detail and specifically as the moving party would have done, stating those material facts which in his judgment he seeks to establish. Upon failure to answer under oath judgment shall be rendered against him."

■ The plaintiffs raise different issues before this Court, but it is necessary first of all to stress the following aspect essentially material to the case. From the record it is unquestionable that a preliminary notice of deficiencies was *actually* given to the predecessor himself, and that another final notice was given—to the predecessor in the person of his heirs, through the executor—both notices by registered mail. The final determinations with the exception of 1943, were sent on May 22, 1951. Within the prescribed period the plaintiffs litigated the year 1943 before the court, and, as to its effects, the year 1944, the tax for these years having been judicially determined by judgment of February 13, 1953, seven months before filing this petition for injunction.

Section 57 (*a*) of the Income Tax Act of 1924, as it applies here, amended by Act No. 230 of 1949 and effective on July 1 of that year, provided that the Secretary shall notify the deficiency and the taxpayer could apply for reconsideration and an administrative hearing within a period of 30 days. Otherwise, or if the deficiency thus notified was affirmed in whole or in part on reconsideration, the Secretary *should* notify his final decision and the taxpayer could then appeal to the courts. This appeal was governed by § 2 (*a*) (1) of Act No. 235 of May 10, 1949 (Sess. Laws, p. 732),* establishing a uniform procedure to appeal to the Tax Court (Superior Court) whereby the taxpayer could appeal from the final determination within a jurisdictional period of 30 days, counted from the notice thereof, and could comply with other require-

---

The former Rule 56 of the Rules of Civil Procedure of 1943, dealing with summary judgment, did not contain this provision, nor does it appear in Federal Rule 56. Naturally, in the light of our authorities on the date that provision was adopted and of the rule governing the granting of summary judgments, the last sentence must be construed in the sense that in the absence of a genuine issue of fact raised by the opposing party, judgment shall be rendered against such party provided the party in whose favor it is rendered is entitle to a judgment as a matter of law. See Rule 36.3.

* This subdivision was repealed by Act No. 9, approved and effective on October 8, 1954.

ments. Section 57(*b*), as amended by Act No. 230, provided that if the taxpayer did not appeal to the court the Secretary *shall proceed to assess* the deficiency with interest from the date prescribed for the payment of the first instalment of the tax.

The provisions of § 60(*a*)(1) and 60(*b*), as amended by Act No. 230, to the effect that the tax *shall be assessed* seven years after the return was filed, which seven-year period shall be extended for 30 days if notice of such deficiency has been sent pursuant to § 57(*a*) and the taxpayer has not appealed to the court, and if he has appealed, then the seven-year period shall be extended by 90 days after the decision has become final, bear relation to the above procedure. After the tax is thus assessed and levied, the same is payable upon demand by the Secretary and may be collected by distraint summary proceeding or by a proceeding in court (§ 61 (*c*)). Under § 83 of the Act of 1924, the taxes thus assessed and levied constitute a first lien in favor of the Commonwealth on the taxpayer's property as of a specified date, and shall be collected by the same distraint proceeding provided for the collection of the property tax, pursuant also to the provisions of Act No. 14 of August 24, 1933 (Sp. Sess. Laws, p. 76), as amended.

 It may be observed that the foregoing constitutes an integrated procedure leading from one phase to another, subject to pre-established time limitations. After a *final* determination is notified, no subsequent administrative action on such determination is contemplated by law to have any legal effect in the proceeding. Notice of the *final* determination of the Secretary having been given on May 22, 1951, the plaintiffs had no right at law to subsequent notice of any deficiency determination for any purpose within the established procedure. Since they did not appeal to the Tax Court within the 30-day period counted as of the notice of May 22, 1951, the Secretary was bound by § 57(*b*) *to assess* and levy

the taxes involved herein as of June 21, irrespective of the papers of waivers of restriction for assessment signed on behalf of the deceased taxpayer by testamentary executor Juan Suárez Fuentes, whether or not such papers were valid and authorized by law; whether or not the executor had power at law—which plaintiffs argue in this Court he did not have—to bind the other heirs of the taxpayer.[3]

Irrespective of any question of prescription which is not supported by evidence in the record nor is litigated in this case, the Secretary's power to assess and levy these taxes on October 24, 1951 and, after they were assessed and levied, to proceed to their collection by the procedures challenged in this petition for injunction, stemmed from the Act and not from the documents referred to. The subsequent administrative actions taken by the plaintiffs as of June 11, 1951, did not interrupt the 30-day period to appeal to the court. In electing to take those actions, they assumed their own risk of forfeiting judicial process or their day in court before

---

[3] Our Income Tax Act of 1924 made no express provision in connection with these official procedures of waivers of restrictions of § 57 and consent to the assessment of a deficiency. Nor were they expressly prohibited. The Federal Revenue Act of 1924, after which our Act was patterned, did not contain any provision to that effect. This is not the same situation, nor should it be confused with the provisions of § 61(b) authorizing the Secretary and the taxpayer to consent in writing to the assessment of the tax after the time prescribed (seven years) in § 60(a). The Federal Revenue Act of 1926 added a provision to the Act of 1924, § 274(d), 44 Stat. 56, in the sense that the taxpayer shall at any time have the right, by a signed notice in writing to the Commissioner, to waive the restrictions provided in subdivision (a) of § 274 (§ 57) on the assessment and collection of the whole or any part of the deficiency. This provision which was not adopted here, was inserted by the Congress in order to enable the taxpayer to pay the tax so that it would not accumulate more interest thereon, and, on the other hand, that he would not forfeit his right to litigate before the Board of Tax Appeals.

Be it as it may, this case merely involved the waiver by the taxpayer of a right under § 57(a) not to make the assessment before appealing to the court or before the expiration of the prescribed period. According to § 4 of the Civil Code, the rights granted by the law may be renounced, provided such renunciation be not contrary to law, to public interest or public order, or prejudicial to a third person. The renunciation of such right in this case was not contrary to law.

being assessed, although on the other hand and as a result of such actions, the tax of $344,277.46 * which they would litigate with the obligation to secure the same was reduced to $121,171.13, which they agreed to pay.

 The plaintiffs allege before this Court that the Secretary was bound to serve notice of a final determination after these procedures were had, and invoke the holding in *González Padín Co.* v. *Tax Court*, 66 P.R.R. 23. They are not right. In the first place, if they accepted the amount thus reduced—whether or not the acceptance by the executor or judicial administrator bound the other heirs—notice of a determination would serve no purpose under § 57. In the second place, there is nothing in the evidence to show that the Secretary set aside the final determination of May 22 to go back to an administrative phase of the case, assuming that he had power under the law to do so. And such final determination not having been set aside, the Secretary would not have been authorized to make a subsequent determination in violation of the provisions of § 57 and of Act No. 235 of 1949. *Padín* v. *Tax Court* construed and applied § 57(a), which provided, in an aspect which is substantial in this case, differently from what it provided as it was applied in this case, in a situation of facts which was also different from the situation in the instant case. The decision is not inconsistent with the views hereinabove set out.

 The foregoing could dispose of the matter, but the plaintiffs argue before this Court that the main issue in this case is whether the procedure of notice of deficiencies may be followed where the taxpayer is dead. They maintain that the so-called "summary" proceeding does not lie, and that the Secretary was bound to institute an ordinary action against the heirs for collection of these taxes. In support thereof they invoke § 60 of the Act. Again we do not agree.

---

* $369,998.75, amount of the final determination, less $25,721.29, deficiency for 1943 which was litigated separately.

Section 60(a)(1), as it applies here, provides that the tax shall be assessed within seven years after the return is filed and that no judicial proceeding for collection of such tax shall be begun after the expiration of such period. Subdivision (2) provides that in the case of income received during the lifetime of the decedent, the tax *shall be assessed* and any proceeding in court for the collection of such tax *shall be begun* within one year after written request therefor is made by the executor, administrator, or other fiduciary representing the estate of such decedent, filed after the return is made. Such assessment may not be made after the expiration of the seven-year period prescribed in subd. (1), nor after the expiration of the one-year period prescribed in subd. (2). The purpose of the preceding provision is to obligate the Secretary to assess the tax or to bring an action for collection within one year after request to make the assessment by the executor or other representative (provided the return has been filed), even though he has additional time from the seven-year period. This is clearly explained in arts. 336 and 337 of the Regulations of the Act approved May 27, 1926.

On the other hand, § 61(c) has provided that where the assessment of the tax is made within the period prescribed in § 60 and in this section, (61(b)), such tax may be collected by distraint or judicial process, begun within 10 years after the assessment of the tax, but nothing in the Act shall prevent the beginning, *without assessment,* of a judicial process for collection of the tax at any time before the expiration of the period within which an assessment may be made.[4]

---

[4] This provision, which in the pertinent part has remained unchanged since its origin in the Act of 1924, must be considered in the light of other original provisions which have subsequently undergone substantial changes. Under § 57(b) and until December 31, 1940, the Treasurer was bound to bring an ordinary action within one year, *without assessment,*. for the collection of any deficiency or part thereof disallowed by the Board of Review and Equalization. Regarding the deficiency upheld, the taxpayer was bound to pay the same under protest and to bring an action for refund

■ There is nothing in § 60 nor in § 61 nor in the Regulations to support plaintiffs' position that, by reason of the taxpayer's death after preliminary notice and before final determination, the procedures under § 57 which eventually lead to the assessment and collection of the tax did not apply and that they terminated automatically with the death, it being the Secretary's duty to bring an ordinary action against the plaintiffs. Their main argument, as set out in the brief, is that § 57 refers time and again to the *"taxpayer,"* and that a deceased taxpayer can not do the things required by that section nor acknowledge notice. Physically he can not, but juridically it is possible he may do those things under our law. The term "taxpayer" used in that section is not a proper noun and, as defined in § 2(9) of the Act, it means any person subject to a tax imposed by this Act. The plaintiffs do not disclaim their substantive obligation to pay the predecessor's taxes; they attack in this action the procedure for their collection.[5]

■ The Act of 1924 does not contain any provisions on the procedure to be followed in a situation such as the

---

of the tax. See, also, the original § 62(c) and § 76. According to the changes subsequently made, in the matter of deficiencies, the ordinary actions, without assessment, under the Act of 1924 brought directly, practically narrow down to the situation of § 61(a)—false or fraudulent return or failure to file a return—since for the purposes of a judicial determination both for the taxpayer and the Secretary, the subsequent proceeding was prescribed in § 57 and other laws relating to the furnishing of a bond in the meantime and the payment thereof by the taxpayer who wished to review in the Supreme Court the tax determined by the court of first instance.

[5] The Secretary contends with sufficient reasoning that the plaintiffs' position before this Court is conflicting and incompatible with their own complaint, in which they allege that the assessment is void precisely because notice was not given as required by § 57(a), and they pray that the Secretary be ordered to notify the determinations pursuant to that section to enable them to litigate the tax. On the other hand, the taxpayer died only 19 days after notice of the preliminary determination was given on November 30, 1949, and until final notice was given on May 22, 1951 the heirs handled the matter administratively, and even after that, without raising at that time any objection to the proceeding.

foregoing. However, § 12 of the Civil Code provides that in matters which are the subject of special laws, any deficiency in such laws shall be supplied by the provisions of that Code. *Cf. Wood v. Tax Court,* 71 P.R.R. 216, 218; *Sierra, Secretary of Labor v. Superior Court,* 75 P.R.R. 792, 797; *Galiñanes Hnos. v. Sup. Ct.; Univ'l Furniture, Int.,* 77 P.R.R. 836, 843. In the *Sierra* case we said more: they shall be supplied by the provisions of the general laws applicable thereto. According to § 610 of the Civil Code (1930 ed.), the heirs succeed the deceased in all his rights and *obligations* by the mere fact of his death. *Cf. Morales v. Cabrera,* 53 P.R.R. 90, 96; *Sosa v. Heirs of Morales,* 58 P.R.R. 362, 365; *Silva v. John Doe,* 75 P.R.R. 198, 203; *Estate of Dávila v. Registrar,* 15 P.R.R. 652. Upon the death of Marcial Suárez his heirs, plaintiffs herein, became *ipso jure* "the taxpayer" referred to in § 57 for all purposes and the procedures of that section, and eventually for all purposes of the proceedings for the assessment and collection of the deficiencies of which § 57 is the forerunner.

Regarding the contention that Juan Suárez Fuentes did not represent the other heirs in the administrative procedures, it is well to recall that, irrespective of the plaintiffs' contentions in *case I-301* and the court's conclusion in that case, Juan Suárez was, in addition to executor, judicial administrator, according to the record. See, by analogy, § § 43, 53 (Rule 17(c) of 1943), and 584 of the Code of Civil Procedure (1933 ed.). The latter provides that it shall be the duty of the administrators and while they are being appointed, of the executors, to represent the decedent in *all legal proceedings* begun by or against him before his death, and in those which may be instituted afterwards by or against the inheritance estate. *Cf. Franceschi v. District Court,* 45 P.R.R. 646, 655; *Calderón v. Heirs of Boerman,* 37 P.R.R. 744, 747. This section is part of a law providing a court proceeding, but it must be borne in mind that the

administrative procedures provided by § 57, notice of which in this case was given to the executor or judicial administrator, by reason of the deficiencies involved, constituted a fortiori a prerequisite of the judicial action without which the plaintiffs could not invoke the jurisdiction of the courts. *Cf. People* v. *Dones*, 56 P.R.R. 201, 207, in which we accepted a definition of the term "proceeding" as including an administrative action. See the definition of the term in CABA-NELLAS, *Diccionario de Derecho Usual.* Furthermore, the Act of 1924 authorizes in its § 82(*b*) the appointment of a judicial administrator at the instance of The People, in connection with that Act, and such requirement must have some purpose.[6]

 The plaintiffs discuss at some length other issues which it is not proper to consider in this petition for injunction and which could perhaps be discussed in an action for refund of these taxes which may be brought in the future. A well-established public policy has prevented by legislative action the suspension of the collection of the taxes by means of injunction. In these cases the lawmaker prohibited the assessment of a deficiency or the institution of a distraint or court proceeding for its collection whenever notice of final determination has not been sent to the taxpayer, or before the expiration of the term within which to bring judicial action, or until the judgment becomes final. He provided that such acts may not be prevented or annulled through judicial proceeding—§ 57(*a*) (10), as amended by Act No. 9 of October 8, 1954 (Sp. Sess. Laws, p. 122). This being an exception to the general public policy, the scope of this judicial

---

[6] Section 584 (51 of the Law of Special Legal Proceedings) is the counterpart of § 1008 of the Spanish Law of Civil Procedure of 1881, providing that the administrator of the property shall represent the intestate in all actions that may be instituted or that may have been instituted when this proceeding were commenced ... and that as such representative he shall institute actions which the deceased might have instituted, even if such proceedings are to be instituted ... or through administrative channels.

proceeding should be strictly limited to the situations of fact expressly provided by statute.

In view of the foregoing, except what we shall set forth below, the judgment appealed from would be affirmed.

## V

On January 28, 1959 the plaintiffs filed a notice of appeal from the judgment rendered in this case, stating:

"You are hereby notified that the plaintiffs, feeling aggrieved by the opinion and judgment rendered on January 28, 1959, which was notified on April 3, 1959 and filed with the record on that date, appeal therefrom to the Supreme Court of Puerto Rico.

"The appeal in this case involves a constitutional question which is the validity or power to collect the taxes by distraint, without having been duly notified and without having an opportunity to have a day in court in violation of the due process of law guaranteed by the Constitution of the Commonwealth of Puerto Rico and the Constitution of the United States of America."

From the entries in the record it clearly appears that the trial court merely passed upon a question of fact: whether or not the Secretary notified in this case a final determination of deficiencies before assessing the tax and proceeding to its collection, which judgment is supported by the evidence which the plaintiffs did not controvert. Section 14 of the Judiciary Act of 1952 (Sp. Sess. Laws, p. 30), as amended by Act No. 115 of June 26, 1958 (Sess. Laws, p. 279), provides that final judgments rendered by the Superior Court in civil cases *involving* or *deciding* a *substantial* constitutional question under the Constitution of the United States or Puerto Rico shall be appealable to the Supreme Court. See Rule 53.2 of 1958. After an analysis of this case it can not be concluded that a *substantial* constitutional nor a constitutional question was raised and decided. There is involved the alleged noncompliance with a *statutory* re-

quirement which could give rise to an injunction against the Secretary, apart from the fact that under our laws a taxpayer in the position of the plaintiffs has the due process of law by means of injunction, such as the one filed herein, or by an action for refund of a tax illegally collected. Neither would the notice of appeal meet the requirements necessary to be considered as a petition for review. This case and case No. 12,685, which are being disposed of on this date by a per curiam decision, and perhaps other similar ones, point to the necessity and advisability that the parties in civil appeals subsequent to the operation of Act No. 115 of 1958, be bound to substantiate adequately the question of jurisdiction of this Court in the light of the record on appeal.

The appeal in this case will be dismissed for lack of a constitutional question.